USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/18/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
INOCENSIO MALDONADO,                            :
                                                :          21-CV-7594 (RWL)
                              Plaintiff,         :
                                                :
              - against -                        :
                                                :
                                                :          **DECISION AND ORDER:**
                                                :          **<u>SOCIAL SECURITY APPEAL</u>**
COMMISSIONER OF SOCIAL SECURITY,                :
                                                :
                              Defendant.         :
------------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Inocensio Nino Maldonado ("Maldonado"), represented by counsel, commenced the instant action against Defendant Commissioner (the "Commissioner") of the Social Security Administration (the "Administration"), pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking review of the Commissioner's decision that Maldonado is not entitled to Supplemental Security Income benefits ("SSI") for lack of disability.  The Commissioner moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules Of Civil Procedure and asks the Court to affirm the Commissioner's decision.  Maldonado cross-moves for judgment on the pleadings, seeking an order to remand the case for a further hearing and award attorney's fees under the Equal Access To Justice Act, 28 U.S.C. § 2412.  For the reasons explained below, the Commissioner's motion is DENIED, Maldonado's motion is GRANTED, and the case is remanded for further consideration.

## PROCEDURAL HISTORY

Maldonado applied for SSI on July 13, 2018, claiming disability due to a fracture in his back.  (R. 318-23.[1])  The Administration denied his application.  (R. 254, 264-69.) Maldonado then requested a hearing before an administrative law judge ("ALJ"), which was held on January 22, 2020.  (R. 270-75, 228-53.)  Maldonado, appearing without representation, testified as did a vocational expert ("VE"), Robert Baker.  Before issuing his decision, the ALJ sought, obtained, and considered additional medical records.  On September 29, 2020, the ALJ issued a decision finding Maldonado not disabled.  (R. 12-26.)  On December 1, 2020, again without representation, Maldonado appealed to the Administration's Appeals Council and submitted 193 pages of additional medical records. (R. 312.)  The Appeals Council determined that the additional records did not demonstrate a reasonable probability that the additional evidence would change the outcome.  The Appeals Council denied Maldonado's request for review on July 8, 2021, making the ALJ's decision the final decision of the Commissioner.  (R. 1-6.)

Maldonado filed the instant case on September 10, 2021, challenging the Commissioner's decision.  (Dkt. 2.)  Maldonado commenced the action pro se, but counsel appeared for Maldonado on April 1, 2022.  (Dkt. 19.)  The parties consented to my jurisdiction for all purposes.  (Dkt. 14.)  The parties' motions were fully briefed as of September 15, 2022.

---

[1] "R." refers to the administrative record filed on January 20, 2022 (Dkt. 12).

## APPLICABLE LAW

**A.      Standard Of Review**

A United States District Court may affirm, modify, or reverse (with or without remand) a final decision of the Commissioner.   42 U.S.C. § 405(g); *Skrodzki v. Commissioner of Social Security Administration*, 693 F. App'x 29, 29 (2d Cir. 2017) (summary order).  The inquiry is "whether the correct legal standards were applied and whether substantial evidence supports the decision."  *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *accord Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012).

"'Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations.'"  *Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (remanding for noncompliance with regulations)).  Courts review de novo whether the correct legal principles were applied and whether the legal conclusions made by the ALJ were based on those principles.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (reversing where the court could not "ascertain whether [the ALJ] applied the correct legal principles … in assessing [plaintiff's] eligibility for disability benefits"); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (reversing where the Commissioner's decision "was not in conformity with the regulations promulgated under the Social Security Act"); *Thomas v. Astrue*, 674 F.Supp.2d 507, 515, 520 (S.D.N.Y. 2009) (reversing for legal error after de novo consideration).

If the reviewing court is satisfied that the ALJ applied the correct legal standards, then the court must "'conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision.'"  *Brault v. Social Security Administration, Commissioner*, 683

F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)).  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)); *see also Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1154 (2019) (reaffirming same standard).   "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*."  *Brault*, 683 F.3d at 448 (internal quotation marks omitted) (emphasis in original); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in [the claimant]'s case record."  42 U.S.C. § 423(d)(5)(B).  The Act requires the ALJ to set forth "a discussion of the evidence" and the "reasons upon which [the decision] is based."  42 U.S.C. § 405(b)(1).  While the ALJ's decision need not "mention[ ] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam), or "'reconcile explicitly every conflicting shred of medical testimony,'" *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983), the ALJ may not ignore or mischaracterize evidence of a person's alleged disability.  *See Ericksson v. Commissioner of Social Security*, 557 F.3d 79, 82-84 (2d Cir. 2009) (mischaracterizing evidence); *Kohler*, 546 F.3d at 268-69 (overlooking and mischaracterizing evidence); *Ruiz*

*v. Barnhart*, No. 01-CV-1120, 2002 WL 826812, at *6 (S.D.N.Y. May 1, 2002) (ignoring evidence).

Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982). The court must afford the Commissioner's determination considerable deference and "'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (quoting *Valente v. Secretary of Health and Human Services*, 733 F.2d 1037, 1041 (2d Cir. 1984)); *Dunston v. Colvin*, No. 14-CV-3859, 2015 WL 54169, at *4 (S.D.N.Y. Jan. 5, 2015) (same) (quoting *Jones*, 949 F.2d at 59), *R. & R. adopted*, 2015 WL 1514837 (S.D.N.Y. April 2, 2015). Accordingly, if a court finds that there is substantial evidence supporting the Commissioner's decision, the court must uphold the decision, even if there is also substantial evidence for the claimant's position. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). "The Court, however, will not defer to the Commissioner's determination if it is the product of legal error." *Dunston*, 2015 WL 54169, at *4 (internal quotation marks omitted) (citing, *inter alia*, *Douglass*, 496 F. App'x at 156; *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)).

## B.     Legal Principles Applicable To Disability Determinations

Under the Act, a person meeting certain requirements and considered to have a "disability" is entitled to disability benefits. 42 U.S.C. § 423(a)(1). The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant's impairments must be "of such

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

To determine whether an individual is disabled and therefore entitled to disability benefits, the Commissioner conducts a five-step inquiry.  20 C.F.R. § 416.920.  First, the Commissioner must determine whether the claimant is currently engaged in any substantial gainful activity.  20 C.F.R. § 416.920(4)(i), (b).  If so, the claimant is not eligible for benefits and the inquiry ceases.

If the claimant is not engaged in any such activity, the Commissioner proceeds to the second step and must determine whether the claimant has a "severe impairment," which is an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 416.920(4)(ii), (c).  If the claimant does not have an impairment or combination of impairments that are "severe," the claimant is not entitled to benefits and the inquiry ends.

If the claimant has a severe impairment or combination of impairments, the Commissioner continues to step three and must determine whether the impairment or combinations of impairments is, or medically equals, one of those included in the "Listings" of the regulations contained at 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the claimant's impairment or impairments meet or medically equal one of those listings, the Commissioner will presume the claimant to be disabled, and the claimant will be eligible for benefits.  20 C.F.R. § 416.920(4)(iii), (d).

If the claimant does not meet the criteria for being presumed disabled, the Commissioner continues to step four and must assess the claimant's residual functional

capacity ("RFC"), which is the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her impairments.  The Commissioner then determines whether the claimant possesses the RFC to perform the claimant's past work.  20 C.F.R. § 416.920(4)(iv), (f), (h).  If so, the claimant is not eligible for benefits and the inquiry stops.

If the claimant is not capable of performing prior work, the Commissioner must continue to step five and determine whether the claimant is capable of performing other available work.  20 C.F.R. § 416.920(4)(v), (g), (h).  If the claimant, as limited by her RFC, can perform other available work, the claimant is not entitled to benefits.  20 C.F.R. § 416.920(a)(4)(iv), (v).  The claimant bears the burden of proof for the first four steps.  *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).  Once the claimant has established that she is unable to perform her past work, however, the Commissioner bears the burden of showing at the fifth step that "there is other gainful work in the national economy which the claimant could perform."  *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (internal quotation marks omitted).

## THE FACTUAL AND MEDICAL RECORD

The parties' renditions of the factual and medical record are consistent with each other, and neither points to any deficiency in the other's presentation of the facts.  Accordingly, the Court generally accepts both as accurate statements of the record and recites here a summary of the more salient facts.  The issues on appeal to this Court are focused on Maldonado's back impairment.  Accordingly, the Court's recitation of the record does so as well.  The Court, however, has reviewed and considered the entire medical and administrative record.

**A.      Personal History**

Maldonado was born on July 8, 1978 and attended school through tenth grade. (R. 318, 239.)  At the time of the hearing in January 2020, Maldonado was living in a homeless shelter with his nineteen-year-old daughter and receiving public assistance benefits.   (R. 238, 247.)   He spent most of his time watching television or using a computer.  (R. 247.)

Maldonado previously worked as a delivery man, stock clerk, waiter, and then cab driver.  (R. 240, 337.)  He claims disability primarily due to back injuries suffered as a result of a bicycle accident.  (R. 245-46.)  At the hearing before the ALJ, Maldonado testified that he had fractures in his back, causing pain and making it difficult to bend, move around, go up and down stairs, and use the subway. (R. 244.)  He said that he could not sit even two minutes due to the pain and that he could walk around only by holding on to walls and doorways.  (R. 244-45.)  He asserted that he had trouble moving his left leg due to problems with his nerves, and that, at times, his back pain shot up to his neck.  (R. 245.)

To treat his pain, Maldonado took over-the-counter medications, such as Tylenol and Bayer.  (R. 248.)  Since filing his application in 2018, Maldonado lost his insurance coverage.   (R. 241-42.)   He therefore only sought treatment by going to a hospital emergency room.  (R. 241-42, 248.)  He testified at the hearing that his pain continued to worsen.  (R. 244.)

**B.      The Medical Record**

**1.      Before Claimed Onset Date**

In August 2008, Maldonado was treated for injuries after falling off a bicycle.  (R. 423.)  X-rays of the lumbar spine revealed mild grade 1 anterolisthesis of L5 on S1 and a

questionable pars defect at L5.[2]  (R. 423-24.)  X-rays taken of Maldonado's cervical spine in June 2014 were negative.  (R. 443.)

From February 16, 2018 to July 18, 2018 (the date of claimed disability), Maldonado's medical record reflects more frequent medical visits.  During a February 16, 2018 visit with a physician's assistant ("PA"), Maldonado reported that he had been in a motor vehicle accident in 2012 and had non-radiating neck and lower back pain.  He described his pain as intermittent that worsened with movement and rated his pain at 7-8 out of 10.  (R. 410.)

On May 1, 2018, Maldonado saw the PA for an x-ray referral.  Maldonado again reported neck and lower back pain, which was minimally relieved with pain medication. He also reported, however, that he was able to do his usual activities.  The PA assessed cervicalgia (neck pain), for which Maldonado refused pain medication, and dorsalgia (lower back pain), and referred Maldonado for x-rays and physical therapy.  (R. 406-07.)

On June 6, 2018, Maldonado saw the PA for follow-up regarding burn wounds on his ankle.  Upon general review of systems, Maldonado denied neck stiffness or pain, and he reported ability to do his usual activities.  (R. 400-01.)  In early June 2018, Maldonado underwent cervical and lumbar x-rays.  The cervical x-rays were considered

---

[2] **Anterolisthesis**, basically another term for spondylolisthesis, is a spine condition in which the upper vertebral body slips forward onto the vertebra below.  Anterolisthesis Definition, SPINE-HEALTH, www.spine-health.com (select "Pain Glossary" underneath the "Resources" tab; then select "Anterolisthesis") (last visited January 18, 2023).  "The amount of slippage is graded on a scale from 1 to 4.  Grade 1 is mild (less than 25% slippage), while grade 4 is severe (greater than 75%)."  *Id.*  **Pars defect**, also referred to as spondylolysis, is a stress fracture through the pars interarticularis of the lumbar vertebrae, which is the thin bone segment joining two vertebrae.  *Spondylolysis*, JOHNS HOPKINS MED., https://www.hopkinsmedicine.org/health/conditions-and-diseases/spondylolysis (last visited January 18, 2023).

"unremarkable," but his lumber x-rays showed grade 1 anterolisthesis of L5 on S1 with L5 pars lysis fractures, mild disc space narrowing at L4/L5 as well as moderate intervertebral disc space narrowing at L5/S1.  (R. 394.)

On June 20, 2018, Maldonado saw the PA for complaints of right knee pain, for which the PA recommended taking ibuprofen.  Upon review of systems, Maldonado again reported ability to do his usual activities.  He denied neck pain or stiffness.  (R. 398-99.)

### 2.    Consultative Medical Opinions

The first medical record following Maldonado's alleged onset date is from August 23, 2018.  On that day, Dr. Michael Healy, M.D., performed a consultative internal medicine examination of Maldonado at the request of the Administration.  Maldonado reported chronic back pain, especially when walking and bearing weight on his feet.  He told Dr. Healy that he could walk only two blocks before needing to stop due to pain, that his lower back pain often radiated to his cervical spine, and that the only medication he took was ibuprofen.  Maldonado said that he could cook, clean, do laundry, and shop but that the activities caused back pain.  (R. 418.)

During the exam, Maldonado appeared in slight discomfort.  His gait and stance were slightly widened, but he could walk on heels and toes without difficulty, did not need assistance, and had no difficulty rising from a chair.  Dr. Healy found that Maldonado had decreased flexion and extension in the cervical spine of 20 degrees anterior and posterior; lateral flexion 10 degrees right and left; and rotary motion 40 degrees right and left.  Dr. Healy also found full lateral flexion and rotary movements in Maldonado's lumbar spine, but decreased flexion and extension of 45 degrees.  Maldonado exhibited decreased strength – 4 out of 5 – in all four extremities.  As to Maldonado's functional abilities, Dr.

Healy opined that Maldonado had mild to moderate limitations of sitting, standing, walking, bending, lifting, and climbing stairs.  (R. 419.)

Dr. Healy assessed chronic neck and back pain, previous lumbar spinal fracture, probable lumbar spinal intervertebral disc disruption, and possible cervical spinal intervertebral disc disruption as cause of chronic neck pain.  (R. 420.)

The following month, on September 4, 2018, an agency medical expert, Dr. S. Stradley, D.O., performed a consultative review of Maldonado's medical record but did not examine Maldonado.  Dr. Stradley opined that Maldonado could frequently lift/carry and push/pull up to 10 pounds frequently, and 20 pounds occasionally; stand/walk about six hours of an eight-hour workday, and sit for about six hours of an eight-hour work day; occasionally climb ramps, stairs, ladders, ropes and scaffolds; and occasionally stoop, bend, crouch and crawl, with unlimited ability to balance.  (R. 260-61.)

### 3.    Records After Onset Date And After Consultative Opinions

In February 2019, Maldonado went to the emergency room at Mount Sinai Hospital to be treated for an upper respiratory infection.  Although his chart notes a past history of chronic back pain, at admission he denied back or neck pain.  (R. 155-56.)  In December 2019 he went to the hospital emergency room with flu like symptoms.  Although a history of back pain was noted in his chart, his physical examination was considered normal. (R. 128.)

On February 3, 2020, Maldonado was seen at the hospital by Dr. Anthony Vincent Christiano for a complaint of back pain.  Maldonado stated that he had fractured his spine at the L4/L5 level and had worsening pain along his entire left side, extreme sensitivity of his lumbar spine, and numbness/tingling in his left upper and lower extremity.  Maldonado reported difficulty putting on his socks but stated he was not taking any medication.  Upon

examination, Maldonado had 5/5 strength in his lower extremities.  Dr. Christiano ordered x-rays, nonsteroidal anti-inflammatory medications, and physical therapy.  In an addendum to the report, Dr. Christiano noted the absence of any fracture upon review of Maldonado's pelvic/lumbosacral x-rays, although he did have L5/S1 anterolisthesis.  (R. 32-34, 214-18.)

On May 7, 2020, Maldonado was treated at the emergency room for nasal congestion and drainage.  He had no other complaints but was noted to have a history of back pain.  Upon review of systems, Maldonado denied back or neck pain and had a normal range of motion.  (R. 95-98.)  On August 20, 2020, Maldonado was treated at the emergency room for an abscess and swelling of his jaw.  History of back pain was noted in the medical chart.  Upon review of systems, however, Maldonado did not report any joint or muscle pain, and had normal ranges of motion with no tenderness.  (R. 62-65.)

The ALJ issued his decision on September 29, 2020.  (R. 12-26.)  On October 29, 2020, Maldonado saw a doctor at Mount Sinai Hospital's orthopedics department for a complaint of back pain.  The doctor referred Maldonado for an MRI of his lumbar spine. Maldonado submitted the record of this visit to the Appeals Council.  (R. 5-11.)

### 4.    Record Newly Submitted In The Instant Action

With his brief filed on August 25, 2022, Maldonado included for the first time a medical record of an MRI from December 13, 2020, approximately two-and-a-half months after the ALJ issued his decision.  (Pl. Mem. at 15-17.[3])  According to the report, the MRI showed that Maldonado had bilateral pars defects at L5 with 7 mm grade 1 anterolisthesis

---

[3] "Pl. Mem." refers to Plaintiff's Memorandum Of Law In Support Of Plaintiff's Motion For Judgment On The Pleadings, at Dkt. 30.

of L5 on S1, and "moderate to severe bilateral foraminal stenosis" and "impingement of the bilateral L5 nerve roots." (Pl. Mem. at 16.)

## C.   Vocational Expert Testimony

At the hearing, the ALJ asked VE Baker whether there were jobs in the national economy that could be performed by an individual of Maldonado's age, with his education and work experience, who was able to perform sedentary work that required only occasional climbing of ramps and stairs, but no climbing ladders or scaffolds, and occasional balancing, stooping, and crouching, but no kneeling or crawling. In response, VE Baker opined that such an individual could perform sedentary work and gave three examples from the Department of Labor's Dictionary of Occupational Titles: a "call out operator," of which there an estimated 4,573 employed nationally, a "telephone quotation clerk," of which there are 3,560 employed nationally, and a "stuffer," of which there are 4,198 employed nationally. (R. 250-51.) There would be no available jobs, however, if the individual needed to be able to sit or stand at will or if the individual would miss two workdays per month. (R. 251.)

## D.   The ALJ's Decision

The ALJ followed the requisite five-step analysis. (R. 17-22.) At step one, he found that Maldonado had not been engaged in substantial gainful activity since July 13, 2018, the application date. At step two, he found that Maldonado had two severe impairments – dorsalgia and cervicalgia, as well as non-severe impairments consisting of acute right knee disorder, superficial burn on right foot, partial thickness burn of right ankle, and depression. The ALJ determined at step three that none of Maldonado's impairments separately or in combination met a listing. The ALJ then determined that Maldonado had the RFC to perform sedentary work limited to only occasional climbing of

ramps and stairs, no climbing of ladders or scaffolds, occasional balancing, stooping, and crouching, but no kneeling or crawling.  At step four, the ALJ determined that Maldonado could not perform past relevant work.  At step five, however, the ALJ found, based on the VE's testimony, that there are significant numbers of jobs in the national economy that Maldonado could perform.

In determining Maldonado's RFC, the ALJ noted the three objective diagnostic test results for Maldonado's back then of record, namely the June 2014 cervical x-rays that were negative; the June 2018 cervical x-rays that were unremarkable; and the June 2018 lumbar x-rays showing a number of mild to moderate findings, including lumbar dextroscoliosis, grade 1 anterolisthesis, fractures, and mild to moderate narrowing between discs.  (R. 20.)  The ALJ concluded that the clinical tests of record "do not reflect findings that would prevent the claimant from engaging in the … limited range of sedentary work [set forth in the ALJ's RFC determination] on a regular and continuing basis."  (R. 21.)  As noted above, the December 2020 MRI results were not of record before either the ALJ or the Appeals Council.

The ALJ also assessed the opinions presented by Dr. Healy, the agency consultative examiner, and Dr. Stradley, the state agency reviewing examiner.  The ALJ found Dr. Healy's opinion that Maldonado had a "mild to moderate limitation for sitting, standing, walking, bending, lifting, and climbing stairs" to be "generally persuasive" as it was based on a detailed examination and was consistent with other record evidence, including the diagnostic tests.  (R. 21.)  The ALJ assessed Dr. Stradley's opinion that Maldonado could perform light work to be only "somewhat persuasive" because the

examination and clinical evidence reflected somewhat greater limitations than those put forth by Dr. Stradley.  (R. 21.)

The ALJ also took into account Maldonado's variable reports of pain, his reported activities of daily living, and the absence of invasive procedures such as surgery or injections.  Additionally, the ALJ observed that "there is little ongoing treatment evidence" of record.  (R. 21.)

## DISCUSSION

Maldonado does not take issue with the ALJ's determinations at any of the first four steps of the sequential analysis; nor does he challenge the ALJ's determination of Maldonado's RFC, at least as based on the record before the ALJ.  Rather, Maldonado challenges the decision on two other grounds.  First, he asserts that the ALJ erred at step five by determining that there was a significant number of jobs in the national economy available to Maldonado.  Second, he argues that the court should consider the recently submitted December 2020 MRI and remand for a renewed disability determination.  The Court begins its discussion with Maldonado's second argument.

## A.    Remand Is Warranted Based On The New MRI Report

Maldonado asserts that the case should be remanded so that the Commissioner can take account of the December 2020 MRI showing that Maldonado's back impairment had progressed to the point of his having "moderate to severe bilateral foraminal stenosis" and nerve root impingement.  (Pl. Mem. at 16.)  The Commissioner argues that the MRI does not provide grounds for remand because it is not reasonably possible that the ALJ would have decided the case differently even if he had considered the MRI.  The Court agrees with Maldonado.

The Act provides that a court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g) (sixth sentence). There thus are three requirements for submitting belated evidence: the evidence must be new and material and there must be good cause for not having incorporated it earlier.

The December 2020 MRI indisputably is new; it did not exist at the time of the ALJ hearing.  *See Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) ("Because the new evidence submitted by [claimant] did not exist at the time of the ALJ's hearing, there is no question that the evidence is 'new' and that 'good cause' existed for her failure to submit this evidence to the ALJ"); *Simon v. Berryhill*, No. 1:16-CV-4088, 2017 WL 4736732, at *2 (E.D.N.Y. Oct. 19, 2017) ("Here, the evidence did not exist at the time of the ALJ hearing, so it is new, and good cause existed for [Plaintiff]'s failure to present it earlier").

Whether there is good cause for Maldonado's not having provided the MRI report "in a prior proceeding" is a bit less clear.  The MRI was taken, and the report generated, on or about December 20, 2020.  Earlier that month, on December 1, 2020, Maldonado requested review by the Appeals Council and submitted additional records available at that time.  The MRI report was not available at the time Maldonado requested review. The Appeals Council did not render its decision, however, until July 8, 2021.  Several months thus passed during which Maldonado could have requested to further supplement the record.  Nothing in the record suggests why he did not do so.  As Maldonado points out, however, he was, at the time, proceeding pro se and residing in a homeless shelter, and it was not until he obtained representation during the instant proceeding that he

received a copy of the report and provided it to his attorney.  (Pl. Mem. at 10.)  Under these circumstances, the Court finds good cause, and the Commissioner does not argue otherwise.  *See Jones*, 949 F.2d at 61 (finding that a plaintiff's "*pro se* status may provide good cause for [his or her] failure to introduce . . . evidence in the prior proceeding"); *Reyes v. Commissioner of Social Security*, No. 14-CV-8843, 2016 U.S. Dist. LEXIS 44908, at *89 (S.D.N.Y. March 30, 2016) ("Plaintiff has shown good cause for submitting the [new records] after the close of the administrative proceedings, because, as a *pro se* claimant, he was apparently unaware that these records were missing from the documents that he submitted to the ALJ").

The question then becomes whether the new MRI report is material.  New evidence is material if it is (1) "relevant to the claimant's condition during the time period for which benefits were denied," (2) probative, and (3) there is a "reasonable possibility that the new evidence would have influenced the Commissioner to decide claimant's application differently."  *Pollard*, 377 F.3d at 193 (internal quotation marks, alterations, and citation omitted); *accord Williams v. Commissioner of Social Security*, 236 F. App'x 641, 644 (2d Cir. 2007).  The December 2020 MRI report satisfies each of those requirements.

First, although the MRI was taken two-and-a-half months after the ALJ's decision, the nature of its findings suggest that they are relevant to the condition of Maldonado's back prior to the ALJ's decision.  The MRI findings concern the same location in the spine as that previously reported in x-rays and doctors' notes.  Yet the findings are more severe than previously found.  Rather than being mild to moderate, as found in the June 2018 MRI and by Dr. Healy in August 2018, the MRI report finds that Maldonado's condition

was moderate to severe and that there was physical impingement of root nerves.  Nothing in the record indicates that Maldonado experienced any significant new trauma between the time the ALJ rendered his decision and when the MRI was taken.  Accordingly, there is good reason to believe that the MRI findings are relevant to the period of time for which benefits were denied. *See Pollard*, 377 F.3d at 193-94 ("'[w]e have observed, repeatedly, that evidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement [i.e., insured status] was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present….'") (alterations in original) (quoting *Lisa v. Secretary of Department of Health and Human Services*, 940 F.2d 40, 44 (2d Cir. 1991)).

The December 2020 MRI also is probative and presents the possibility that the ALJ may have reached a different conclusion with respect to Maldonado's disability claim. Central to the ALJ's determination was his recital of the objective diagnostic evidence, which consisted only of x-rays, the most recent one from June 2018, showing mild to moderate findings.  Based on that diagnostic evidence, the ALJ concluded that the clinical tests of record "do not reflect findings" that would prevent Maldonado from performing sedentary work.  (R. 21.)  The December 2020 MRI, however, reveals moderate to severe findings and nerve root impingement (a potential cause of radiating pain), both of which could lead to a conclusion that the more recent diagnostic evidence does reflect findings precluding sedentary work.  In reaching his conclusion, the ALJ noted that Maldonado's lack of treatment "makes it difficult to corroborate the claimant's allegations of functional limitations with objective findings."  (R. 21.)  The MRI provides another objective data

point in the otherwise sparse treatment record.  *See Williams*, 236 F. App'x at 644 (finding that new evidence was probative and material because it countered the ALJ's finding of insufficient evidence to support plaintiff's allegations of incapacitating pain).

The Commissioner argues that there is no reasonable possibility that the ALJ would have decided Maldonado's case differently based upon the December 2020 MRI. But in doing so, the Commissioner only underscores why the MRI is significant.  For example, the Commissioner points out that Maldonado mostly had normal findings on routine musculoskeletal examinations and emphasizes the ALJ's assessment that Maldonado's complaints of pain could not be reconciled with the objective record.  (Def. Reply at 4-5.[4])  The December 2020 MRI, however, reflects just the opposite: it is far from a routine finding, and it could well explain Maldonado's complaints.  The MRI is all the more apt because its findings are more severe than those previously found.  *See, e.g., Pollard*, 377 F.3d at 193 (explaining that subsequent evidence of the severity of a condition suggests that the condition may have been more severe in the past than previously thought); *Williams v. Kijakazi*, No. 20-CV-5991, 2022 WL 17491008, at *12 (S.D.N.Y. Dec. 5, 2022) (recognizing materiality of recent MRI "suggesting that Plaintiff might have been suffering from a substantially more severe spinal impairment than initially presented to the ALJ"); *Simon*, 2017 WL 4736732 at * 2 (new x-rays and MRI showing continued degeneration of Plaintiff's spine and hips were material to determination of whether Plaintiff could perform sedentary work).  One of the cases on which the Commissioner relies is distinguishable for precisely that reason.  *See Jennifer*

---

[4] "Def. Reply" refers to Defendant's Reply Memorandum Of Law In Support Of Defendant's Motion For Judgment On The Pleadings And In Opposition To Plaintiff's Motion For Judgment On The Pleadings, at Dkt. 31*.*

*P. v. Berryhill*, No. 18-CV-0026, 2019 WL 330529, at *12 (N.D.N.Y. Jan. 25, 2019) (new MRI of Plaintiff's knee did not show issues any more severe than anything previously diagnosed).

The other case on which Commissioner relies is less distinct.  *See Gemmell v. Commissioner of Social Security*, No. 16-CV-1014, 2017 WL 3328237 (N.D.N.Y. Aug. 2, 2017).   In *Gemmell*, the court remanded but not based on a new MRI showing degenerative changes in the Plaintiff's spine.  The court rejected the MRI as not material because the record before the ALJ showed only scattered references to back pain, Plaintiff did not seek specific treatment for back pain, and the record did not otherwise contain evidence of any functional impact of the findings in the MRI.  *Id.* at *10.  As the Commissioner notes, the instant case is somewhat similar in that Maldonado did not consistently complain of back pain, he did not seek treatment for his back beyond over the counter medication, and there is no direct evidence of the functional impact of the MRI.

Nonetheless, the Court cannot reach the same conclusion here.  That is because of the ALJ's specific reasoning emphasizing the objective evidence and the extent to which it could be squared with Maldonado's complaints.  To be sure, the ALJ also based his decision on Maldonado's relative lack of seeking treatment and his not having received invasive treatment such as surgery or injections.  On remand, the ALJ may reach the same outcome finding the record demonstrates functional limitations consistent with performing sedentary work.  But there is at least a reasonable possibility that the outcome may be different upon the ALJ's consideration of the December 2020 MRI.  Accordingly, the new evidence is material, and remand is warranted.

The Court now turns to Maldonado's other basis for review, which concerns the number of jobs in the national economy that can be performed by someone with Maldonado's RFC.

**B.    Substantial Evidence Supports The ALJ's Step Five Determination**

At step five, the ALJ must identify the types of jobs the claimant could perform notwithstanding his disabilities and must "ascertain whether those kinds of jobs 'exist[ed] in significant numbers in the national economy.'"   *Biestek*, ___ U.S. at ___, 139 S. Ct. at 1152  (quoting, inter alia, § 404.960(c)(1)).  Here, based on the VE's testimony, the ALJ identified three examples of sedentary jobs that Maldonado could perform.  In total, those three categories comprised 12,241 jobs.  The ALJ found that number sufficient to meet the requirement that there exists in the national economy significant numbers of jobs that Maldonado could perform.   Maldonado challenges that conclusion, arguing that the number of available jobs is not significant enough to support the denial of benefits.

Neither the Social Security Act, nor the applicable regulations, define what is meant by "significant numbers."   Nor has the Second Circuit set any bright line rule regarding the number of jobs needed to satisfy the Commissioner's burden at step five. Courts in this and other districts within the Second Circuit nonetheless "'have generally found that what constitutes a 'significant' number is fairly minimal.'"   *Rodriguez v. Astrue*, No. 11-CV-6977, 2013 WL 3753411, at *3 (S.D.N.Y. July 17, 2013) (quoting *Fox v. Commissioner of Social Security*, No. 02-CV-1160, 2009 WL 367628, at *20 (N.D.N.Y. Feb. 13, 2009) (collecting cases)).   District courts thus have found varying nationwide numbers upwards of 9,000 jobs sufficient to meet the significant number requirement. *See*, *e.g.*, *Rodriguez*, 2013 WL 3753411 at *2-3 (12,000 jobs nationwide was significant);

*Kelly D. v. Saul*, No. 18-CV-1190, 2019 WL 6683542, at *6 (N.D.N.Y. Dec. 6, 2019) (9,996 jobs nationwide was significant); *Debiase v. Commissioner of Social Security*, No. 3:19-CV-68, 2019 WL 5485269, at *12 (D. Conn. Oct. 25, 2019) (11,442 jobs nationwide deemed significant); *Sanchez v. Berryhill*, 336 F. Supp.3d 174, 178 (W.D.N.Y. 2018) (9,046 jobs nationwide was, consistent with other courts, significant).

Maldonado cites several cases where courts found numbers of jobs exceeding those available to Maldonado were not significant for purposes of the step five analysis. *See, e.g., Ellis v. Kijakazi*, 553 F. Supp.3d 628, 635-37 (E.D. Wis. Aug. 9, 2021) (14,500 jobs nationally was not significant); *John C. v. Saul*, No. 4:19-CV-04111, 2021 WL 794780, at *6 (C.D. Ill. March 2, 2021) (20,000 jobs nationally was not significant); *James A. v. Saul*, 471 F. Supp.3d 856, 860 (N.D. Ind. 2020) (finding "14,500 is far below any national number of jobs that the Seventh Circuit Court of Appeals has determined to be significant"); *Valencia v. Astrue*, No. C 11-06223, 2013 WL 1209353, at *18-19 (N.D. Cal. March 25, 2013) (finding 14,082 jobs nationally was not significant).

None of those decisions are from courts in the Second Circuit; rather, they are from either the Seventh Circuit or the Ninth Circuit.  Meanwhile, the Commissioner points to several decisions from courts within several other circuits finding similar or even lesser numbers to be significant.  *See, e.g.*, *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) (6,000 jobs nationally was significant); *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (11,000 jobs nationally was significant); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (10,000 jobs nationally was significant); *Riffee v. Kijakazi*, No. 20-CV-1328, 2021 WL 3913972, at *2-3 (W.D. Pa. Sept. 1, 2021) (11,300 jobs nationally was significant); *Vinning v. Astrue*, 720 F. Supp.2d 126, 137 (D. Me. 2010)

(collecting cases and concluding that "numbers of jobs in the ballpark of 10,000 to 11,000 nationwide have been held [to be] 'significant'").

In short, the ALJ's determination at step five is consistent with the weight of authority in and outside of this Circuit and satisfies the burden of showing that there are relevant jobs in significant numbers nationally.

The Court so finds with some reservations.  The three sedentary jobs that make up the 12,241 positions to which the VE testified all come from the DOT, which some have recognized as antiquated and containing numerous obsolete positions that have been overtaken by progress and modernization over the last 45 years.[5]  *See* Lisa Rein, *Social security denies disability benefits based on list with jobs from 1977*, WASH. POST (Dec. 27, 2022), https://www.washingtonpost.com/politics/2022/12/27/social-security-job-titles-disabled-applicants-obsolete/, (the DOT "lists 137 unskilled, sedentary jobs …. But in reality, most of these occupations were offshored, outsourced, and shifted to skilled work decades ago.  Many have disappeared altogether").

Additionally, the reliability of the VE's job-number figures is suspect.  The VE determined the number of jobs available using something called "Job Browser Pro."  (R. 250.)  The ALJ did not solicit, and the VE did not volunteer, any information about the reliability of that source, the VE's use of it, or, for that matter, anything else about it.  A recent judicial opinion has characterized the current evidentiary basis for job-number

---

[5] One might question the current relevance of a "call out operator" who uses the telephone to compile credit information to fulfill subscriber requests (DOT 237.367-014); "telephone quotation clerk" who answers telephones from customers requesting current stock quotations or who calls customers to notify them of stock quotations (DOT 237.367-046); and "stuffer," alternately known as "blower" or "toy stuffer," who tends machines that blow filler into stuffed-toy shells or may stuff toys by hand (DOT 731.685-014).

determinations in social security cases to be a "systemic" shortcoming:  "Since 2008, the Social Security Administration has been promising courts and claimants alike that a new, unified job systems – designed to simplify the process of compiling job-number estimates – will soon be available.  More than a decade later, the Administration has not completed its work.  So today's world is a distinct second best."  *Ruenger v. Kijakazi*, 23 F.4th 760, 765 (7th Cir. 2022) (Scudder, J., concurring).

Compounding matters, the Administration looks at the number of jobs in a complete vacuum:  "We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country," ***regardless*** of whether work exists in the claimant's "immediate" area, whether job vacancies exist, or whether the claimant would be hired even if he or she applied for work.  20 C.F.R. § 416.966.  One is left to wonder what relevance job numbers have when they do not take into account real world factors that determine whether a given applicant can find gainful employment.

These questions must be left to another day.  The record before the Court provides no basis to further examine these seeming deficiencies in the Administration's means of determining whether a significant number of jobs exist.  Indeed, Maldonado has not asserted any arguments along those lines.  Under the existing framework, and on the basis of the record in this case, the Commissioner has satisfied its burden at step five of the sequential analysis.  If, however, on remand the ALJ modifies his RFC finding based on the December 2020 MRI, the ALJ will need to conduct a new step five analysis.

## CONCLUSION

For the reasons stated above, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's motion is DENIED, Maldonado's motion is GRANTED, and the case is

remanded so that the ALJ may consider the new MRI evidence.  The Clerk of Court is respectfully requested to terminate any open motions and close the case.

SO ORDERED,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: January 18, 2023
        New York, New York

Copies transmitted on this date to all counsel of record.